Heidi Griffith, Esq. (SBN 333725)
DIRECTIONS LAW, INC.
9140 Trask Avenue, Suite 100
Garden Grove, CA 92844
Telephone: (714) 515-1155
Email: heidi@directionslaw.com

Specially Appearing on a Limited-Scope Basis
for Debtor Minh Tuong Nguyen

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA — SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>MINH TUONG NGUYEN,<br><br>Debtor. | Case No. 8:26-bk-10347-SC<br><br>Chapter 7<br><br>**DEBTOR'S LIMITED OPPOSITION TO TRUSTEE'S MOTION TO AUTHORIZE SALE OF LAWSUIT ENTITLED MINH TUONG NGUYEN V. CUSTOS TERRAE, ET AL. FREE AND CLEAR OF LIENS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*(Declaration Of Minh Tuong Nguyen Filed Concurrently Herewith)*<br><br>Date: October 27, 2026<br>Time: 11:00 a.m.<br>Place: Courtroom 5C, 411 West Fourth Street, Santa Ana, CA 92701<br>Judge: Hon. Scott C. Clarkson |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE CHAPTER 7 TRUSTEE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

Debtor Minh Tuong Nguyen (the "Debtor") submits this Limited Opposition to the Motion to Authorize Sale of Lawsuit Free and Clear of Liens filed by Jeffrey I. Golden, Chapter 7 Trustee (the "Trustee") [Doc. 153] (the "Sale Motion"). The Debtor appears specially and on a limited-scope basis for this Motion only, at the request of the Debtor's bankruptcy counsel of record. The Sale Motion seeks to sell the estate's interest in the lawsuit entitled *Minh Tuong Nguyen v. Custos Terrae, Remax Real Estate One, George Balch, Daniel Dulac, Julie Dao and Huong Thi Tran*, Orange County Superior Court Case No. 30-2026-01541241-CU-FR-CJC (the "Lawsuit"), to defendant Daniel Dulac ("Dulac"). Citations to "Doc. 153" refer to the ECF header page and line numbers of the Sale Motion and its exhibits.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Debtor does not oppose a sale of the Lawsuit for optimal value. However, the Trustee proposes to sell the Lawsuit to Dulac for $60,000. (Doc. 153 at p. 2, ll. 5–7.) Dulac is a named defendant in the Lawsuit. (*Id.* at p. 2, ll. 5–6.) Dulac's stated purpose is to "resolve and conclude the Lawsuit promptly, definitively, and without the delay and expense of further litigation and potential appeals." (Purchase and Sale Agreement (the "PSA"), Recital J, Doc. 153 at p. 30.) A defendant's acquisition of the claims against him "must also be analyzed as a compromise." (*Simantob v. Claims Prosecutor, L.L.C.* (*In re Lahijani*) (9th Cir. BAP 2005) 325 B.R. 282, 290.) A trustee, "as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." (*Martin v. Kane* (*In re A & C Properties*) (9th Cir. 1986) 784 F.2d 1377, 1381.) The first factor in that analysis is the "probability of success in the litigation." (*In re Lahijani*, *supra*, 325 B.R. at p. 290.) On that factor, the Trustee offers a single fact: he "has been unable to obtain counsel to handle the lawsuit on a pure contingency basis." (Doc. 153 at p. 18, ll. 24–25.)

The Debtor and his family previously offered to finance the Lawsuit to receive "5% of any net recoveries after legal fees and costs." (*Id.* at p. 11, ll. 20–22.) The Trustee called that proposal "uncertain." (*Id.* at p. 15, ll. 20–21.) The Debtor's fiancée, Nga Luu ("Nga"), now intends to submit an overbid with a larger recovery share. (Declaration of Minh Tuong Nguyen ("Debtor Decl."), filed concurrently herewith, ¶¶ 4–6.) Her overbid will offer cash and ten percent (10%) of the gross recovery on the Lawsuit. (*Id.* ¶ 6.) However, the overbid form, as drafted, provides only for a cash bid. (Doc. 153 at p. 143.) The Bankruptcy Appellate Panel reversed a sale order where the trustee required cash bids and "valued the fixed percentage at zero." (*In re Lahijani*, *supra*, 325 B.R. at pp. 285, 289, 292.)

The Debtor therefore requests that the Court direct that recovery-share bids be valued. The Debtor requests that the Court deny approval of the sale to Dulac. The Debtor further requests that the Court deny Dulac both a good-faith finding under 11 U.S.C. § 363(m) ("Section 363(m)") and a waiver of the stay under Federal Rule of Bankruptcy Procedure 6004(h) ("Rule 6004(h)").

**II. RELEVANT BACKGROUND**

The Debtor filed the complaint commencing the Lawsuit (the "Complaint") on or about January 20, 2026. (Doc. 153 at p. 9, ll. 16–17.) The Complaint asserts causes of action for fraud and conversion against Dulac. (Complaint, Doc. 153 at p. 47, ll. 3–5; *id.* at p. 52, ll. 9–11.) Dulac contends that the Debtor released defendant Custos Terrae ("Custos"), together with "its officers, directors, agents, and all persons acting in concert with Custos, including Dulac," in an Escrow Termination and Settlement Agreement dated September 6, 2023 (the "Settlement Agreement"). (Doc. 153 at p. 10, ll. 1–5.) Dulac contends that the Settlement Agreement bars the claims in the Lawsuit. (*Id.* at p. 10, ll. 6–8.) However, the Complaint alleges that the defendants' misrepresentations were made to induce the Debtor to "[l]ater release his escrow deposit and agree to a settlement under false and misleading circumstances." (Complaint ¶ 44(e), Doc. 153 at p. 49, ll. 13–14.)

On or about February 4, 2026, the Debtor filed a voluntary petition for relief under

chapter 7. (Doc. 153 at p. 9, ll. 5–6.) The Debtor scheduled the Lawsuit as an asset. (*Id.* at p. 9, ll. 11–14.) After the petition date, on or about May 22, 2026, Dulac filed a First Amended Cross-Complaint (the "Cross-Complaint") in the Lawsuit. (*Id.* at p. 10, ll. 9–10.) The Cross-Complaint names the Debtor as a cross-defendant. (Debtor Decl. ¶ 3.) The Debtor's special motion to strike (anti-SLAPP) is directed at the Cross-Complaint. (*Id.*) That motion, a petition to compel arbitration, and a joinder are set for hearing on January 22, 2027. (Doc. 153 at p. 10, ll. 12–14.) The Lawsuit remains pending. (*Id.*)

Before Dulac made his offer, the Trustee contacted the Debtor about funding or purchasing the Lawsuit. (*Id.* at p. 11, ll. 19–20.) The Debtor and his family "offered to finance the litigation with the Trustee to receive 5% of any net recoveries after legal fees and costs." (*Id.* at p. 11, ll. 20–22.) The Trustee calls that proposal "uncertain." (*Id.* at p. 15, ll. 20–21.) The Trustee states that a 5% share "would seem to cap the recovery at $110,000, less the attorneys' fees and costs to be incurred." (*Id.* at p. 19, ll. 23–24.) The Trustee also states: "If the Debtor or his family or any other party wish to overbid, they will have an opportunity to do so via the sale contemplated by this Motion." (*Id.* at p. 11, ll. 24–25.)

The Trustee then signed the PSA with Dulac. (*Id.* at p. 11, ll. 26–28.) The purchase price is $60,000 cash. (*Id.* at p. 2, ll. 6–7.) The minimum initial overbid is $65,000. (*Id.* at p. 3, l. 7.) To qualify, an overbidder must deliver a $50,000 deposit, a written offer on the overbid form, and proof of ability to close at least two business days before the hearing. (*Id.* at p. 13, ll. 4–11.) The PSA also requires the Trustee to request two further orders: a Section 363(m) good-faith finding and a waiver of the Rule 6004(h) stay. (PSA ¶ 2, Doc. 153 at p. 30.) The PSA calls those orders the "Contingencies." (*Id.*) However, the PSA provides that "the sale is not contingent upon the Court's adopting the Contingencies." (*Id.*) To support the good-faith finding, the Trustee relies on his own declaration. (Doc. 153 at p. 16, ll. 16–17.) That declaration states that "[t]he sale was reached via arms-length negotiations." (*Id.* at p. 24, ll. 19–20.) Dulac declares that his negotiations with the Trustee "were all at arm's length through counsel." (*Id.* at p. 26, l. 14.) Dulac also declares that he is not related to the Debtor, the Trustee, or any other party

involved in the bankruptcy case. (*Id.* at p. 26, ll. 16–17.)

The sale remains subject to overbid. (*Id.* at p. 2, l. 8.) Nga intends to submit an overbid in her own name. (Debtor Decl. ¶ 5.) She intends to appear and bid at the auction. (*Id.*) Her overbid will offer cash at or above the $65,000 minimum overbid. (*Id.* ¶ 6.) It will also offer the estate ten percent (10%) of the gross recovery on the Lawsuit. (*Id.*) Nga will pay all attorneys' fees and costs of prosecuting the Lawsuit. (*Id.*) She intends to deliver the deposit, the executed overbid form, and proof of funds by October 23, 2026. (*Id.* ¶ 7.)

**III. LEGAL STANDARD**

A trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." (11 U.S.C. § 363(b)(1).) "The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances." (*In re Lahijani*, *supra*, 325 B.R. at p. 288.) When a defendant acquires the estate's causes of action, the transaction "must also be analyzed as a compromise." (*Id.* at p. 290.) That analysis applies the fair and equitable standard, which "requires consideration of: (a) probability of success in the litigation; (b) collectability; (c) complexity, expense, inconvenience, and delay attendant to continued litigation; and (d) the interests of creditors, which are said to be 'paramount.'" (*Id.*)

**IV. ARGUMENT**

**A. A Sale of Claims to a Defendant Is a Compromise That Must Be Proven Fair and Equitable.**

In *Lahijani*, the debtor's brother-in-law and co-defendant formed an entity "in order to acquire the avoiding power causes of action." (*In re Lahijani*, *supra*, 325 B.R. at p. 285.) The Panel observed that the entity "should have called itself 'Claims Defender' or 'Claims Extinguisher.'" (*Id.* at p. 284.) Because "the transaction amounted to acquisition of causes of action by a defendant," the Panel held that it "must also be analyzed as a compromise as to which the court has an independent duty to determine whether it is 'fair and equitable.'" (*Id.* at p. 290.) The Panel reversed because "[n]one of this analysis, which is inherently fact-intensive, relative, and contextual, was undertaken by the bankruptcy court." (*Id.* at pp. 290, 292.)

The same analysis governs this sale. Dulac is a named defendant in the Lawsuit. (Doc. 153 at p. 10, l. 17.) The Complaint asserts fraud and conversion against him. (Complaint, Doc. 153 at p. 47, ll. 3–5; *id.* at p. 52, ll. 9–11.) Dulac seeks to "resolve and conclude the Lawsuit promptly, definitively, and without the delay and expense of further litigation and potential appeals." (PSA, Recital J, Doc. 153 at p. 30.) The Trustee argues that "the parties are not trading releases and the transaction is subject to overbid," so the transaction "is more appropriately considered as a sale." (Doc. 153 at p. 17, ll. 1–3.) However, Dulac's status as a defendant makes the transaction a compromise as well. (*In re Lahijani*, *supra*, 325 B.R. at p. 290.) The sale in *Lahijani* was also subject to overbid. (*Id.* at pp. 285–286.) Dulac is, moreover, not a stranger to the Debtor but an adverse litigant: he is simultaneously prosecuting a cross-complaint against the Debtor that is the subject of the Debtor's pending special motion to strike (anti-SLAPP), which confirms that his acquisition of the Debtor's claims is aimed at extinguishing them rather than realizing their value for the estate.

The Trustee, "as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." (*In re A & C Properties*, *supra*, 784 F.2d at p. 1381.) The Trustee concedes that burden. (Doc. 153 at p. 18, ll. 1–2.) The Trustee relies on arm's-length negotiation, stating that "[t]he price was arrived at with the Buyer following arms-length negotiations." (*Id.* at p. 15, ll. 17–18.) However, arm's-length negotiation does not carry the Trustee's burden, because "there must be more than a mere good faith negotiation of a settlement by the trustee in order for the bankruptcy court to affirm a compromise agreement." (*In re A & C Properties*, *supra*, 784 F.2d at p. 1381.)

The fair and equitable standard begins with the "probability of success in the litigation." (*In re Lahijani*, *supra*, 325 B.R. at p. 290.) On that factor, the Trustee offers a single fact: he "has been unable to obtain counsel to handle the lawsuit on a pure contingency basis." (Doc. 153 at p. 18, ll. 24–25.) The Trustee "believes that fact alone reflects that the probability of success is far from certain." (*Id.* at p. 18, ll. 25–26.) The Trustee then recites what the defendants "dispute" and "contend." (*Id.* at p. 19, ll. 1–3.) The Trustee attaches the Settlement Agreement but does not

analyze it. (*Id.* at p. 19, l. 2; *id.* at pp. 137–141.) However, the Complaint alleges that the defendants induced the Debtor to "[l]ater release his escrow deposit and agree to a settlement under false and misleading circumstances." (Complaint ¶ 44(e), Doc. 153 at p. 49, ll. 13–14.) The Trustee does not address that allegation. (Doc. 153 at pp. 18–19.)

The second factor is "collectability." (*In re Lahijani*, *supra*, 325 B.R. at p. 290.) The Trustee "has not investigated the ability of the defendants to satisfy a judgment." (Doc. 153 at p. 19, l. 15.) The Trustee instead relies on what he "has been informed" and what he "is advised." (*Id.* at p. 19, ll. 17–18.)

The Trustee has not carried his burden. "An approval of a compromise, absent a sufficient factual foundation which establishes that it is fair and equitable, inherently constitutes an abuse of discretion." (*In re A & C Properties*, *supra*, 784 F.2d at p. 1383.) The Court should deny approval of the sale to Dulac.

**B. The Court Must Value a Recovery Share in Determining the Highest and Best Bid.**

A recovery share has value. "[S]o long as the pertinent probability is not zero, the expected and present value calculation will yield some value." (*In re Lahijani*, *supra*, 325 B.R. at p. 290.) "Any such value should be taken into account." (*Id.*) However, the trustee in *Lahijani* accepted only cash bids. (*Id.* at pp. 285–286.) The sale notice required that "both initial and subsequent overbids had to be in cash or cash equivalent." (*Id.* at p. 285.) The trustee then "refused to entertain bids that included a fixed percentage of net proceeds in addition to a sum certain." (*Id.* at p. 289.) "In effect, he valued the fixed percentage at zero." (*Id.*) The Panel held that the bankruptcy court "abused its discretion" by approving the sale "without appropriately evaluating appellants' bid." (*Id.* at p. 292.)

The Sale Motion repeats that error. It provides that "[t]he proposed sale shall be all cash." (Doc. 153 at p. 2, l. 22.) The overbid form provides only a blank for a cash price. (*Id.* at p. 143.) An overbid must be submitted on that form "without any material changes." (*Id.* at p. 3, ll. 16–17.) The Trustee may disqualify a bidder for "the addition of conditions to the sale." (*Id.* at p. 3,

ll. 21–23.) A bidder who adds a recovery share to the form therefore risks disqualification. However, the Trustee's own procedures measure overbids by "the best overall offer." (*Id.* at p. 13, ll. 20–21.)

The Trustee states that a 5% share "would seem to cap the recovery at $110,000, less the attorneys' fees and costs to be incurred." (*Id.* at p. 19, ll. 23–24.) Nga intends to offer a 10% share of the gross recovery. (Debtor Decl. ¶ 6.) The Trustee's $110,000 figure is 5% of a $2.2 million recovery. Ten percent of the same recovery is $220,000. Nga's share is measured on the gross recovery, not the net. (*Id.*) Nga will also pay all attorneys' fees and costs of prosecuting the Lawsuit. (*Id.*) The Trustee's concern that "the fees and costs of counsel could consume a large part of any recovery" therefore does not reach Nga's share. (Doc. 153 at p. 15, ll. 21–22.)

The Sale Motion also misidentifies the overbid form. The notice of motion requires "a written, executed overbid in the form of Exhibit '9' attached hereto." (*Id.* at p. 3, l. 16.) The Sale Motion's last exhibit is Exhibit "8." (*Id.* at pp. 142–146.) The memorandum requires a written offer "on the overbid form attached hereto as Exhibit '7.'" (*Id.* at p. 13, l. 8.) However, Exhibit "7" is the Settlement Agreement. (*Id.* at pp. 137–141.) The overbid form is Exhibit "8." (*Id.* at pp. 143–144.) A bidder therefore cannot tell from the Sale Motion which form it must sign.

The Sale Motion also sets three different deadlines to pay the balance of the price. The PSA requires payment "within two (2) business days of entry of the order confirming the sale." (PSA ¶ 4, Doc. 153 at p. 31.) The overbid form requires payment "within seven (7) calendar days after the date of entry of an order granting the Sale Motion." (Doc. 153 at p. 144.) The procedures set closing "no later than the first business day after fourteen calendar days following date of entry of the Sale Order." (*Id.* at p. 13, l. 28–p. 14, l. 1.) The successful overbidder "will be bound by all the terms of the PSA, the Overbid Offer and this Motion except as to price." (*Id.* at p. 13, ll. 23–24.) The deposit "will be non-refundable in the event that, for any reason whatsoever, the Successful Bidder fails to close the sale timely." (*Id.* at p. 13, ll. 25–26.) A successful overbidder therefore cannot know which deadline governs the forfeiture of its $50,000 deposit.

The Court should modify the overbid procedures to permit overbids that combine cash with a share of the recovery. The Court should value any recovery share in determining the highest and best bid. The Court should also designate Exhibit "8," modified to permit a recovery-share component, as the operative overbid form. The Court should set a single deadline for payment of the balance.

**C. Paul Nguyen May Not Credit-Bid His Avoidable, Pre-Petition Judgment Lien; Any Bid by Paul Must Be All Cash.**

The only lien the Sale Motion identifies against the Lawsuit is a judgment lien that judgment creditor Paul Nguyen ("Paul") recorded on or about February 2, 2026 — two days before the February 4, 2026 petition. (Doc. 153 at p. 2, ll. 25–28.) The Trustee concedes that "Paul's Judgment Liens are avoidable as preferential transfers" under 11 U.S.C. § 547, and that he intends to commence an adversary proceeding to avoid them. (Id. at p. 11, ll. 1–6, 14.) A disputed, avoidable lien does not secure an allowed claim, and Paul should not be permitted to credit-bid it under 11 U.S.C. § 363(k), which allows a lienholder to bid its debt only "unless the court for cause orders otherwise." The Trustee's own concession that the lien is an avoidable preference is cause. Permitting a credit bid of an avoidable paper lien would chill a fair auction and let a disputed lien displace a good-faith cash overbid for no value to the estate. For cause, the Court should order that any bid by Paul be all cash, on the same terms as any other bidder. See, e.g., In re Fisker Auto. Holdings, Inc., 510 B.R. 55, 59–61 (Bankr. D. Del. 2014). The Sale Motion's own structure confirms this: the sale is free and clear of Paul's liens, which attach to the proceeds (id. at p. 12, l. 8), so Paul holds no lien on the Lawsuit to offset against any bid.

**D. A Sale Order Without a Section 363(m) Finding or a Rule 6004(h) Waiver Remains Subject to Appellate Review.**

Section 363(m) is a "statutory safe harbor from appellate remedies." (*In re Lahijani*, *supra*, 325 B.R. at p. 284.) Under Section 363(m), the reversal of a sale order on appeal "does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith." (11 U.S.C. § 363(m).) A good-faith purchaser therefore keeps the property even if the appellate

court reverses the sale order. The safe harbor does not apply where the sale was "stayed pending appeal." (*Id.*) The safe harbor also requires a finding of good faith. Whether a purchaser acted in good faith "is to be determined by the trial court with findings based on evidence." (*In re Lahijani*, *supra*, 325 B.R. at p. 284.) The buyer in *Lahijani* was an entity that a co-defendant formed "in order to acquire the avoiding power causes of action." (*Id.* at p. 285.) That buyer "elected to proceed without a determination that it was a 'good faith' purchaser within the meaning of § 363(m)." (*Id.* at p. 290.) The Panel therefore found "no impediment to reversing and remanding" the order approving the sale. (*Id.*) Without a Section 363(m) finding, an order approving a sale to Dulac would remain subject to reversal on appeal.

The PSA calls the Section 363(m) finding and the Rule 6004(h) waiver the "Contingencies." (PSA ¶ 2, Doc. 153 at p. 30.) The PSA provides that "the sale is not contingent upon the Court's adopting the Contingencies." (*Id.*) Dulac remains bound to purchase the Lawsuit if the Court denies both. Neither order is therefore necessary to this sale.

The estate gains nothing from a Section 363(m) finding. The finding would benefit only Dulac. It would protect his purchase even if the sale order were reversed on appeal. That purchase is a defendant's acquisition of the fraud and conversion claims asserted against him. (Complaint, Doc. 153 at p. 47, ll. 3–5; *id.* at p. 52, ll. 9–11.) The Court should decline to make a Section 363(m) finding as to Dulac.

The estate also gains nothing from a Rule 6004(h) waiver. Rule 6004(h) stays a sale order for 14 days unless the court orders otherwise. (Fed. Rules Bankr. Proc., rule 6004(h), 11 U.S.C.) The PSA already accounts for that stay. Without a waiver, the PSA becomes effective on "the first business day which is more than 14 calendar days after the date of entry of the order approving the Agreement." (PSA ¶ 2, Doc. 153 at p. 30.) With a waiver, the PSA becomes effective "upon entry of the Sale Order." (*Id.*) A waiver would therefore let the sale take effect before any party could seek a stay pending appeal. The Trustee's only reason for the waiver is that "[i]t would be beneficial to the estate and all creditors to complete the sale at the earliest possible time." (Doc. 153 at p. 20, ll. 3–4.) The Trustee identifies no harm to the estate from a

14-day delay. (*Id.* at p. 20, ll. 2–5.) The Court should deny the Rule 6004(h) waiver as to any sale to Dulac.

**V. CONCLUSION**

For the foregoing reasons, the Debtor respectfully requests that the Court:

1. Modify the overbid procedures to permit overbids that combine cash with a share of the recovery on the Lawsuit, and value any recovery share in determining the highest and best bid;
2. Bar judgment creditor Paul Nguyen from credit-bidding his avoidable, pre-petition judgment lien, and order that any bid by Paul be all cash on the same terms as any other bidder;
3. Designate Exhibit "8" to the Sale Motion, modified to permit a recovery-share component, as the operative overbid form, and set uniform deadlines for qualification and closing;
4. Deny approval of the sale of the Lawsuit to Dulac;
5. Decline to make a Section 363(m) good-faith finding as to Dulac;
6. Deny the waiver of the Rule 6004(h) stay as to any sale to Dulac; and
7. Grant such other relief as the Court deems just and proper.

Dated: October 13, 2026

Respectfully submitted,

DIRECTIONS LAW, INC.

By: <u>*/s/ Heidi Griffith*</u>
Heidi Griffith
Specially Appearing on a Limited-Scope Basis
for Debtor Minh Tuong Nguyen

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 9140 Trask Ave, Suite 100, Garden Grove, CA 92844

A true and correct copy of the foregoing document entitled (*specify*): DEBTOR'S LIMITED OPPOSITION TO TRUSTEE'S MOTION TO AUTHORIZE SALE OF LAWSUIT ENTITLED MINH TUONG NGUYEN V. CUSTOS TERRAE, ET AL. FREE AND CLEAR OF LIENS; MEMORANDUM OF POINTS AND AUTHORITIES
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **10/13/2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Christopher Cramer secured@becket-lee.com
- Jeffrey I Golden (TR) lwerner@go2.law, kadele@go2.law;C205@ecfcbis.com
- Heidi H.L. Griffith heidi@directionslaw.com
- David S Hagen davidhagenlaw@gmail.com, LawOfficesofDavidSHagenCA1@jubileebk.net
- D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdriv e.com
- Eric P Israel epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackh ays.c om
- Joshua L Scheer jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- David Tang lawyertang@yahoo.com
- Krystina T Tran ktran@ktranlaw.com, trankr76075@notify.bestcase.com;ktran@ecf.courtdrive.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Reilly D Wilkinson rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com

☐ Service information continued on attached page

**2.** **SERVED BY UNITED STATES MAIL**:
On (*date*) **10/13/2026,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _______________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/13/2026 | Huyen Tran | [signature] |
| *Date* | *Printed Name* | *Signature* |

Hon. Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5130
Santa Ana, CA 92701

Hahn Loeser & Parks LLP
Michael Gleason / Jennifer Kirby
600 W. Broadway, Suite 1500
San Diego, CA 92101

Michael D. Davis, Esq
Law Office Of Michael D. Davis
12341 Newport Avenue, Suite B101
North Tustin, CA 92705

Julie Dao
17021 Bolero Lane
Huntington Beach, CA 92649

Huong Thi Tran
PO Box 640303
San Jose, CA 95164

Huong Thi Tran
10472 Villa Del Cerro
Santa Ana, CA 92705.

Daniel Dulac
27912 Baker Canyon Road
Silverado, CA 92676

Custos Terrae
27912 Baker Canyon Road
Silverado, CA 92676

Paul Nguyen
16027 Brookhurst St Ste I-104
Fountain Valley, CA 92708

Wendy Slavkin
11707 Sunset Blvd., #24
Los Angeles, CA 90049