WENDY L. SLAVKIN (State Bar No. 89100)
LAW OFFICES OF WENDY L. SLAVKIN
11707 Sunset Boulevard, Suite 24
Los Angeles, CA 90049
Telephone: (310) 476-1959
Facsimile: (310) 476-1939
Email: wendy@slavkinlaw.com

Attorney for Creditor Daniel Dulac

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>MINH TUONG NGUYEN,<br><br>Debtor. | Case No. 8:26-bk-10347-SC<br><br>Chapter 7<br><br>**DANIEL DULAC'S OPPOSITION TO TRUSTEE'S REQUEST FOR A FINDING UNDER 11 U.S.C. § 363(m) AS TO NGA LUU [DKT. 153, 164, 165]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: November 17, 2026<br>Time: 9:30 a.m.<br>Place: Courtroom 5C<br>411 W. Fourth Street<br>Santa Ana, California<br>Judge: Hon. Scott C. Clarkson |

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE CHAPTER 7 TRUSTEE, AND ALL INTERESTED PARTIES:

Creditor Daniel Dulac opposes the Trustee's request for a finding under 11 U.S.C. § 363(m) that Nga Luu is a good faith purchaser of the estate's lawsuit (Dkt. 164). This opposition is based on the memorandum below, the concurrently filed Declaration of Daniel Dulac, and the record in this case. The good faith purchaser finding should be denied for the

reasons below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

At the October 27, 2026 auction of the estate's lawsuit against Custos Terrae *et al.*, Orange County Superior Court Case No. 30-2026-01541241-CU-FR-CJC (the "Lawsuit"), the Trustee accepted Luu's bid, but the Court reserved the question of whether she is a good faith purchaser. The Court set a hearing "for the 363(m) finding . . . [b]ecause serious allegations have occurred, and in the concern of the Court that there is a connection with Ms. [Luu]." Oct. 27, 2026 Hr'g Tr. (Dkt. 171) ("Tr.") 44:2–5. The Court asked for "further briefing, and further evidence." Tr. 42:22–23.

The Trustee answered with a brief (Dkt. 164) and a single declaration from Luu, with no documents attached (Dkt. 165). He states that he has "no reason to challenge" her declaration (Dkt. 164 at 5).

Dulac responds at the Court's invitation. The Court allowed "anyone, including unsuccessful bidders," to review the declarations and to file any opposition, with supporting evidence, by November 13. Tr. 42:24–25, 43:22–44:1. Dulac is also a creditor (Proof of Claim No. 2), a defendant in the Lawsuit, and the competing bidder at the auction. Dulac Decl. ¶¶ 2–3.

This opposition makes two points. First, the Trustee's showing does not answer the questions the Court asked. Second, Luu's own conduct has not earned the protection of a good faith finding.

### II. BACKGROUND

#### A. The Sale Motion

The Trustee moved to sell the Lawsuit to Dulac for $60,000 in cash, subject to overbid (Dkt. 153). The Debtor opposed the sale and announced that his fiancée, Luu, would overbid (Dkt. 158), and Heidi Griffith filed Luu's first declaration (Dkt. 159). In reply, the Trustee told the Court that the Debtor or his fiancée "should be required to show that the funds are not coming from a source that would be property of the Estate" (Dkt. 160 at 6:14–

16).

**B. The Auction**

A hearing on the sale motion, including the auction, was held on October 27, 2026. Heidi Griffith introduced herself as "specially appearing for the debtor." Tr. 4:2–3. Griffith also acted as Luu's "authorized agent for purposes of bidding." Dkt. 165 ¶ 3. Griffith appeared by telephone. Luu and the Debtor, who were in Vietnam, appeared together on the Zoom feed. Tr. 13:25–14:15; Dkt. 165 ¶ 3; Dulac Decl. ¶ 5. Griffith asked for "a Vietnamese interpreter for the debtor and the other bidder," and when none had been arranged, offered to "do the translation" herself. Tr. 4:8–14. When the Court asked whether she was representing "them," she answered yes. Tr. 13:13–16.

Luu made ten bids. Before nine of them, Griffith asked for time to confer with her clients. Tr. 13:22–15:1, 25:9–13, 26:12–15, 27:20–22, 28:13–18, 29:24–30:1, 30:17–19, 33:2–4, 34:3–5. During those pauses, although the audio was imperceptible, the Debtor could be seen speaking while Luu did not appear to speak. Dulac Decl. ¶ 5. Luu prevailed at $280,000 in cash plus 15% of the gross recovery. Tr. 34:9–10, 35:14–19.

**C. The Court's Request**

The Court reserved the § 363(m) question for the reasons quoted above and asked for "further briefing, and further evidence." Tr. 42:22–23, 44:2–7. It directed the Trustee to file any declarations supporting the finding by November 5, allowed any party to file opposition with supporting evidence by November 13, and set this hearing for November 17. Tr. 43:16–44:2, 44:16–21.

**D. The Trustee's Response**

The Trustee filed his brief (Dkt. 164) supported by a short declaration from Luu (Dkt. 165). The declaration states that Luu and the Debtor "are not now, and have never been married, although we are engaged" (*id.* ¶ 7); that she learned of the sale from the Debtor (*id.* ¶ 5); that Griffith was her "authorized agent for purposes of bidding" (*id.* ¶ 3); and that she will pay "with my own money," none of it from the Debtor "directly or indirectly" (*id.* ¶ 8). Luu's declaration attaches no documents.

## III. LEGAL STANDARD

**A. Burden of Proof**

"[T]he proponent of section 363(m) good faith has the burden of proof." *T.C. Investors v. Joseph (In re M Capital Corp.)*, 290 B.R. 743, 747 (9th Cir. BAP 2003). "Correlatively, the opponent of good faith does not have the burden to demonstrate the absence of good faith." *Id.* at 745. "It would be error to presume good faith from any lack of evidence in the record to the contrary." *Id.* at 748. The finding is discretionary, and a court need not make one to approve a sale. *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002).

**B. Good Faith**

A good faith purchaser is one who buys "in good faith" and "for value." *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992). Good faith "speaks to the integrity of his conduct in the course of the sale proceedings." *Cmty. Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985).

## IV. ARGUMENT

**A. The Trustee Has Not Carried His Burden of Proving Good Faith.**

**1. One Bare Declaration Is Not the Evidence the Court Asked For.**

The Court reserved this question because of a possible connection between Luu and the Debtor, and it asked for evidence. The Trustee's response does not address that connection. It offers no documents, no account of any investigation by the Trustee, and nothing about the Debtor's role in the bidding.

**2. The Absence of Contrary Evidence Cannot Carry the Trustee's Burden.**

The Trustee argues that the Court may "rely upon the lack of evidence to the contrary," citing *Riffenburg v. Rice (In re Roper)*, 2025 WL 3639281 (B.A.P. 8th Cir. Dec. 16, 2025). Dkt. 164 at 6:9–11. *Roper* is an out-of-circuit decision. In this circuit, the governing standard is *M Capital*, which, as discussed in Part III.A, places the burden on the proponent of the finding and holds that good faith may not be presumed from a lack of contrary evidence. 290 B.R. at 747–48. The Trustee must therefore establish Luu's good faith

with affirmative evidence. His only evidence is Luu's bare-bones declaration, which lacks a foundation for its translation (Part IV.A.4) and addresses the source of her funds in a single conclusory sentence (Part IV.B.3). That does not carry his burden.

**3. Contrary Evidence Exists, and the Trustee Knew of It.**

Dulac does not bear the burden of demonstrating the absence of good faith. *M Capital*, 290 B.R. at 745. Even so, the Trustee's premise is wrong: there is contrary evidence. Luu has repeatedly called the Debtor her husband in public posts, and photographs show a May 2025 Buddhist wedding ceremony bearing both of their names. Dulac Decl. Exs. A–B; *see* Part IV.B.1. The Trustee knew of this before he filed his brief. Before the auction, he disclosed to the Court that "a creditor has alleged, based upon social media posts, that the Debtor and Ms. Nga Luu . . . were actually married in May 2025," and said the bidder should be required to show the source of her funds. Dkt. 160 at 6:9–16. His brief acknowledges the same posts (Dkt. 164 at 2:14–17, 4:23–25).

**4. Luu's Declaration Lacks a Foundation for Its Translation.**

Luu's declaration is the only evidence offered for the finding, and it is written in English. Yet at the auction her own agent asked for a Vietnamese interpreter for her and offered to translate, and the Trustee's counsel acknowledged "the language issue." Tr. 4:8–14, 43:7–11. The declaration does not say that Luu reads English, and it does not identify anyone who translated it for her. That leaves an open question: did Luu understand what she signed? The United States District Court for the Northern District of California has struck sworn statements from non-English speakers that lacked this foundation, holding that "any interpretation must be shown to be an accurate translation done by a competent translator." *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 659 (N.D. Cal. 1994). Without a showing that Luu reads English, or that the declaration was accurately translated for her by a competent translator, it deserves no weight, and nothing remains to carry the Trustee's burden.

**B. Luu's Conduct Has Not Earned Good Faith Protection.**

Although Dulac has no burden to demonstrate the absence of good faith, *M Capital*,

290 B.R. at 745, substantial evidence in the record raises questions about whether Luu is entitled to the protection of a good faith finding.

**1. Luu's Statements to the Court Contradict Her Statements to the Public.**

To the Court, Luu swears: "We are not now, and have never been married, although we are engaged" (Dkt. 165 ¶ 7). However, Luu maintains an active social media presence, and over the course of the past several months she has made a number of posts of her and the Debtor, referring to the Debtor as "chồng" (husband) and herself as "vợ" (wife). Screenshots of these posts appear as Exhibit B to the Dulac Declaration, and some excerpts (including Facebook-provided automatic translation) are provided here:

- She wrote that "my husband had to pack his bags for a business trip" ("chồng mình vẫn phải xách vali đi công tác"). Dulac Decl. Ex. B (Feb. 2, 2026 post).
- She wrote that she had kept her account private, afraid that people would find out about "my husband and family" ("Chồng mình, gia đình mình"). *Id.* (Feb. 25, 2026 post).
- With photographs of herself in a bridal gown beside the Debtor, she thanked him so that she could be "a true wife" ("một người vợ đúng nghĩa"). *Id.* (Mar. 22, 2026 post).
- She complained of fake accounts created "to compare my husband and me" ("so sánh 2 vợ chồng mình"). *Id.* (Apr. 21, 2026 post).
- In a post tagging the Debtor, she wrote "my husband - Journalist Nguyen Tuong Minh" ("Chồng mình - Nhà Báo Nguyễn Tường Minh"). *Id.* (June 21, 2026 post).

Chồng means husband and vợ means wife; Vietnamese has separate words for fiancé and fiancée: vị hôn phu (fiancé) and vị hôn thê (fiancée). Dulac Decl. ¶ 7.

Beyond Luu's own posts describing herself and the Debtor as husband and wife, Facebook also contains records of what appears to be their wedding. A May 13, 2025 post, tagged at a temple in Ho Chi Minh City, congratulates the Debtor on "a fairytale wedding" ("một đám cưới cổ tích") and shows a backdrop reading "Lễ Hằng Thuận, Tường Minh &

Lưu Nga," which Google Translate renders as "The Buddhist wedding ceremony of Tuong Minh and Luu Nga." Dulac Decl. ¶ 7; *id.* Ex. A (May 13, 2025 post). The other English quoted above is the translation Facebook displays. *Id.* ¶ 7.

Luu's declaration addresses none of this. It does not say whether the May 2025 ceremony occurred, what it was, why she calls the Debtor her husband, or whether any marriage was registered anywhere. Dulac offers these materials to show what Luu has said; the Court need not decide whether a legal marriage exists, or which of her statements is true.

A buyer who gives the Court one account and the public another, and does not explain the difference, has not shown the integrity in the sale proceedings that good faith requires. *Suchy*, 786 F.2d at 902.

**2. Dulac's Investigation in Vietnam Is Ongoing.**

In order to obtain clarity on the matter, after the October 27, 2026 hearing, Dulac retained a law firm with offices in Vietnam to investigate the Debtor's and Luu's marital status. The firm's preliminary findings affirm that Luu and the Debtor are married, and its investigation is ongoing. Dulac Decl. ¶ 8.

**3. Luu Has Not Shown That Her Funds Are Independent of the Debtor.**

Even if they are only engaged, Luu is buying claims from the estate of the man she plans to marry. It is prudent to require proof that the money comes from her own sources and not from the Debtor or the Debtor's estate. The Trustee set the standard himself: the bidder "should be required to show that the funds are not coming from a source that would be property of the Estate" (Dkt. 160 at 6:14–16). However, the Trustee's brief (Dkt. 164) and Luu's declaration (Dkt. 165) do not meet this standard. They identify no bank, account, or entity. The only support for the source of funds comes from Luu's declaration, which, beyond its foundational defects (*see* Part IV.A.4), offers a single conclusory sentence that she will pay "with my own money" (Dkt. 165 ¶ 8), with no evidence of where that money comes from.

## V. CONCLUSION

The Trustee has not carried his burden of showing that Luu is a good faith purchaser, and Luu's own conduct does not warrant the protection of § 363(m). Dulac respectfully requests that the Court deny the Trustee's request for a finding under 11 U.S.C. § 363(m) as to Nga Luu, and that any order approving the sale, or the purchase agreement, contain no such finding. Alternatively, Dulac requests that, before making any such finding, the Court require competent, targeted evidence sufficient to resolve the identified issues and permit examination of genuinely disputed facts.

Dated: November 12, 2026

LAW OFFICES OF WENDY L. SLAVKIN

By: Wendy Slavkin
Wendy L. Slavkin
Attorney for Creditor Daniel Dulac